NORTH CAROLINA NATIONAL BANK v. H. L. GILLESPIE, Trading
AS H. L. GILLESPIE'S USED CARS

No. 12

(Filed 7 December 1976)

1. **Rules of Civil Procedure §§ 15, 56— unpleaded defenses raised by evidence — consideration on summary judgment motion**

    Unpleaded defenses, when raised by the evidence, should be considered in resolving a motion for summary judgment; however, it is the better practice to require a formal amendment to the pleadings.

2. **Bills and Notes § 20— action on notes — oral agreement executed contemporaneously with notes — summary judgment improper**

    In an action to recover on five demand notes, defendant's evidence establishing the execution of certain notes and security instruments accompanied by a prior or contemporaneous parol agreement as to the mode of payment and the fund from which payment would be made and evidence which tended to show a continued course of dealing pursuant to the parol agreement was admissible at the hearing upon plaintiff's motion for summary judgment; such evidence showed the existence of a conflict as to a material fact thereby rendering summary judgment improper.

3. **Judges § 5— refusal of judge to disqualify himself**

    When the trial court found sufficient force in the allegations contained in defendant's motion that the trial judge disqualify himself to proceed to find facts, he should have either disqualified himself or referred the matter to another judge before whom he could have filed affidavits in reply or sought permission to give oral testimony, and it was not proper for the trial judge to find facts so as to rule on his own qualification to preside when the record contained no evidence to support his findings.

    Justice COPELAND did not participate in the consideration or decision of this case.

ON *certiorari* to review the decision of the Court of Appeals, 28 N.C. App. 237, 220 S.E. 2d 862, affirming entry of summary judgment for plaintiff by *Clark, J.,* 19 May 1975 Session of SURRY District Court.

Plaintiff instituted action to recover on five demand notes executed to it by defendant in the aggregate principal sum of $15,113.09. Each of these demand notes was admitted into evidence and each note contained this provision:

> . . . [T]o secure payment of this note and of all other liabilities as hereinafter defined, the undersigned hereby pledge to the said Bank, or its assigns, holders of the

same, the collateral described on the back hereof. It is hereby agreed that upon the non-payment of this note, or of any other of said liabilities, the said Bank, or the holder thereof, may sell the same at public or private sale for cash . . . .

Defendant answered and denied execution of the notes. He also counterclaimed alleging that as a part of the floor-plan arrangement with plaintiff and its predecessor, he was to receive certain rebates commonly known as dealer reserves. He demanded judgment in the sum "of $15,000 to $20,000 or such amounts as the evidence reveals he is entitled to upon his counterclaim."

Plaintiff moved for summary judgment and defendant moved for summary judgment on his counterclaim.

In support of its motion for summary judgment, plaintiff offered the affidavit of G. Thomas Fawcett, Sr., one of its vice-presidents, who stated that he was familiar with defendant's signature and he had compared defendant's signature as it appeared in his verifications of his pleadings in this cause with the signatures of the notes in controversy. In his opinion the signatures on each of the notes in question was that of defendant. Plaintiff or its predecessor had never entered into any agreement to pay rebates to defendant on a floor-plan agreement or on a discount arrangement except through a dealer reserve account accruing from 5% withholding on notes discounted by defendant to the bank. This reserve account was held by the bank to apply to any uncollectable notes discounted by defendant.

Defendant offered the deposition of Mr. D. C. Rector whose testimony disclosed that he had been employed by plaintiff's predecessor all of his adult life and served as its president for twenty years preceding his retirement on 1 January 1966. He had business dealings with defendant prior to his retirement but had no agreement with defendant concerning rebates when accounts were paid off. There was a reserve account for delinquent discounted notes. The depositions of Roger Inman, Jr., one of plaintiff's vice-presidents and Lowell Thomas, the bank's City Executive tended to corroborate Mr. Rector.

Defendant offered his affidavit in which he stated that for a period of from twelve to fifteen years he had been engaged

in a course of dealings with plaintiff and its predecessor which was initiated through an agreement with Mr. D. C. Rector. He "floor planned" automobiles, discounted customer notes with the bank and executed the notes and security agreements required by the bank. Defendant averred that he had an oral agreement with the bank through its president Mr. D. C. Rector which supplemented the notes and security instruments signed by him. We quote portions of defendant's affidavit:

> I further had an agreement that I would receive one (1%) percent add-on dealer reserve after all contracts which I had floor-planned and customer sales of which I had endorsed to the First National Bank of Mount Airy were paid out. That this business relationship has continued, and that I still have outstanding contracts which have not been paid out by my customers in the First National Bank of Mount Airy, which has recently been purchased by the North Carolina National Bank . . . .

> . . . I also had an oral agreement with D. C. Rector that no demand for payment would be made until after the bank's remedies under the floor-plan agreement and other security instruments, which I was required to sign by the bank, had been exhausted. I further had an agreement and understanding that the cars floor-planned would stand good for the debt to the extent of their fair market value at the time any request was made by the bank for the payment of the notes. . . . I had an agreement with D. C. Rector that before demand would be made upon the notes without an opportunity to either pay the interest or renew the notes that the dealer reserve would be used to pay off the notes.

> . . . I never made a request for the dealer reserve since my business relationship with the First National Bank of Mount Airy was continuing in the same manner that it had been continuing for 12 to 15 years.

Defendant admitted execution of the notes sued upon, but averred that the notes were made pursuant to the oral agreement.

The trial judge entered summary judgment for plaintiff and denied defendant's motion for summary judgment on his counterclaim. Defendant's counterclaim action was retained for

trial. Although not a part of the judgment, the trial judge verbally ordered that "the judgment is not to be entered on the judgment docket until a final determination of all issues are made."

*Folger & Folger, by Larry Bowman, for plaintiff.*

*Franklin Smith for defendant.*

BRANCH, Justice.

The threshold question presented by this appeal is whether defendant could demonstrate the existence of a genuine issue as to a material fact by raising an unpleaded defense by his evidence opposing plaintiff's motion for summary judgment.

Nowhere in his answer did defendant assert the defenses raised by his affidavits filed in opposition to the motion for summary judgment.

Earlier cases took the view that evidence offered at a hearing on a motion for summary judgment must be supported by allegations in the pleadings. *Cudahy Packing Co. v. U. S.*, 37 F. Supp. 563. The later cases hold that, in light of the policy favoring liberality in the amendment of the pleadings, "[e]ither the answer should be deemed amended to conform to the proof offered by the affidavits or a formal amendment permitted, the affidavits considered, and the motion for summary judgment decided under the usual rule pertaining to the adjudication of summary judgment motions." 6 Moore's Federal Practice ¶ 56.11[3] (2d Ed. 1976). *See Rossiter v. Vogel*, 134 F. 2d 908; *Bergren v. Davis*, 287 F. Supp. 52. Chapter 1A, Rules of Civil Procedure.

[1] We hold that unpleaded defenses, when raised by the evidence, should be considered in resolving a motion for summary judgment. However, we think in such cases it is the better practice to require a formal amendment to the pleadings.

[2] The primary question presented by this appeal is whether defendant's evidence in support of his defenses was admissible at the hearing upon plaintiff's motion for summary judgment.

Plaintiff's evidence and defendant's admissions establish that defendant executed the five notes upon which this action rests, thereby establishing a *prima facie* case. Plaintiff contends

Bank v. Gillespie

that the evidence which defendant offered in opposition to its motion for summary judgment was barred by the parol evidence rule and that without such evidence there exists no material issue of fact for trial.

The recent case of *Borden, Inc. v. Brower,* 284 N.C. 54, 199 S.E. 2d 414, considered the identical question presented by this case. There, the Court extensively reviewed the decisions and commentaries which have considered the North Carolina parol evidence rule and its many exceptions. In *Borden,* plaintiff brought action to recover on a renewal promissory note. Plaintiff moved for summary judgment supporting its motion by portions of a deposition of defendant in which defendant admitted the execution of the note in suit and admitted the plaintiff's records reflected that in 1969 defendant owed plaintiff $11,970. Defendant offered affidavits to the effect that contemporaneously with the signing of the original note, defendant and plaintiff's agent agreed verbally that the note would reflect amounts represented by two customers' notes for bookkeeping purposes only, but that defendant would not be liable for these amounts. The amount of the two customer notes was reflected in each renewal note given to plaintiff by defendant including the note sued upon. Holding that evidence of the parol agreement was admissible and reversing the lower court's grant of summary judgment, this Court, speaking through Justice Moore, in part, stated:

> Affidavits filed in opposition to a motion for summary judgment "shall set forth such facts as would be admissible in evidence." G.S. 1A-1, Rule 56(e). If the pleadings, affidavits, and deposition offered by defendant do not set forth facts that would be admissible in evidence because of the parol evidence rule, then such evidence was properly stricken, and since there remained no genuine issue as to any material fact, the court correctly rendered summary judgment for plaintiff. *Singleton v. Stewart,* 280 N.C. 460, 186 S.E. 2d 400 (1972); *Kessing v. Mortgage Corp.,* 278 N.C. 523, 180 S.E. 2d 823 (1971).

The parol evidence rule in North Carolina was stated by Chief Justice Stacy in *Insurance Co. v. Morehead,* 209 N.C. 174, 183 S.E. 606 (1936), as follows:

> "It is well-nigh axiomatic that no verbal agreement between the parties to a written contract, made

before or at the time of the execution of such contract, is admissible to vary its terms or to contradict its provisions. [Citing numerous cases.] . . .

"On the other hand, there are a number of seeming exceptions, more apparent than real perhaps, as well established as the rule itself. *Roebuck v. Carson,* 196 N.C., 672, 146 S.E., 708. . . ."

Chief Justice Stacy then sets out eight exceptions to the rule, citing numerous North Carolina cases for each exception. The third exception is that the parol evidence rule is not violated:

"[B]y showing mode of payment and discharge as contemplated by the parties, other than that specified in the instrument. *Bank v. Rosenstein,* 207 N.C., 529, 177 S.E., 643; *Kindler v. Trust Co.,* 204 N.C., 198, 167 S.E., 811; *Wilson v. Allsbrook,* 203 N.C., 498, 166 S.E., 313; *Stockton v. Lenoir,* 198 N.C., 148, 150 S.E., 886; *Bank v. Winslow,* 193 N.C., 470, 137 S.E., 320."

The sixth exception is:

"[B]y showing the whole of a contract, only a part of which is in writing, provided the contract is not one required by law to be in writing and the unwritten part does not conflict with the written. *Dawson v. Wright, supra* [208 N.C., 418, 181 S.E., 264]; *Henderson v. Forrest,* 184 N.C., 230, 114 S.E. 391; *Evans v. Freeman,* 142 N.C., 61, 54 S.E., 847."

\* \* \*

Promissory notes are not generally subject to the parol evidence rule to the same extent as other contracts. Parties drawing such instruments tend to follow a rather definitely standardized form. If collateral terms and conditions had been agreed upon, they may be omitted from the note itself to insure its negotiability. Accordingly, it is rather common for a promissory note to be intended as only a partial integration of the agreement in pursuance of which it was given, and parol evidence as between the original parties may well be admissible so far as it is not inconsistent with the express terms of the note. See 3 Corbin on Contracts § 587, at 510 (1960); 2 Stansbury's N. C. Evidence, Brandis Rev. § 256 (1973); Dalzell, Twenty-five

Years of Parol Evidence in North Carolina, 33 N.C.L. Rev. at 432-33 (1955).

* * *

This action is between the original parties to the note. When such an instrument is in the hands of a holder other than a holder in due course, this Court has permitted variance of its express terms by showing that it was to be enforced only on the happening of certain conditions, or only to the extent necessary to accomplish a certain purpose, or that it was payable only out of a certain fund, or that it was given as evidence of an advancement, or that it might be discharged by a method of payment or performance different from that stated in the writing. *Insurance Co. v. Morehead, supra,* and above cited cases. . . .

The effect of a course of dealings between the same parties was considered by this Court in *Worth Co. v. Feed Co.,* 172 N.C. 335, 90 S.E. 295. Headnote #4 of that decision accurately states its pertinent holding. We quote:

Where a bank takes a negotiable paper by indorsement from its depositor, who had always sufficient funds there to protect its payment, and gives him credit for the amount, with the right to check on it, the transaction is evidence that the bank purchased for value; and when the evidence is conflicting as to an agreement between them that the bank should charge the item back upon *nonpayment,* it is for the jury to determine the intent of the parties, upon which they may *consider the course of dealings,* the rate of discount, the state of the account, and other relevant circumstances. [Emphasis ours.]

The Court of Appeals reasoned that *Borden* was inapplicable to the facts of this case because *Borden* was concerned with renewal notes. We do not agree. In *Borden,* there was an agreement contemporaneous with the execution of the original note. Thereafter, there was a course of dealings in which renewal notes were executed in reliance upon the oral agreement. Here, according to defendant, notes and security agreements were originally executed by him to plaintiff's predecessor contemporaneously with an oral agreement. Thereafter, new notes and security agreements were executed in a course of dealings pursuant to the oral agreement. We are unable to find a viable distinction between the execution of the renewal notes in *Borden*

and the execution of· notes in instant case pursuant to an established course of dealings.

A motion for summary judgment shall be allowed only when the evidence reveals no genuine issue as to any material fact and· when the moving party is entitled to a judgment as a matter of law. An issue is material if the facts alleged would constitute a· legal defense or . would affect the result . of the action. Summary judgment should be used cautiously and the burden of clearly establishing lack of a triable issue is on the moving party. The .moving party's papers must be carefully scrutinized and .those of the opposing party must..be regarded with indulgence. *Koontz v. City of Winston-Salem,* 280 N.C. 513, 186 S.E. 2d 897; *Kessing v. Mortgage Corp.* 278 N.C. 523, 180 S.E. 2d 823. ·

Defendant's evidence, when taken in the light most favorable to him, establishes the execution of certain notes and security instruments accompanied by a prior or contemporaneous parol agreement as to the mode of payment and the fund from which it would be paid. The evidence tending· to show a continued course of dealings pursuant to this oral agreement was sufficient to have affected the result of the action, thereby creating a conflict between· plaintiff's evidence and defendant's evidence as to a material fact. Thus, a jury question was presented and the trial judge erred when he granted plaintiff's motion for summary judgment.

**[3]** Finally, defendant contends that the trial judge erred by failing to disqualify himself from hearing this cause.

On 19 May 1975, the date set for the hearing of the motions for summary judgment, defendant filed his unverified motion in the cause asking that Judge Clark disqualify himself on the ground that the judge was biased and prejudiced toward defendant because: (1) There had been an unfriendly termination of attorney-client relationship between Judge Clark and defendant's family, (2) Judge Clark had prosecuted defendant ·in a criminal action while the judge was serving as solicitor of the Mount Airy Recorder's Court, (3) Judge Clark had money on deposit with plaintiff and enjoyed friendly relations with some of plaintiff's employees.

The only thing before Judge Clark in support of defendant's motion was the unverified motion in the cause. There was no evidence in contradition.

---

---

In the present posture of this case, we need not consider this question at length. We are, however, constrained to observe that when the trial judge found sufficient force in the allegations contained in defendant's motion to proceed to find facts, he should have either disqualified himself or referred the matter to another judge before whom he could have filed affidavits in reply or sought permission to give oral testimony. Obviously it was not proper for this trial judge to find facts so as to rule on his own qualification to preside when the record contained no evidence to support his findings. *Ponder v. Davis*, 233 N.C. 699, 65 S.E. 2d 356.

In this connection, we think the language found in *Kentucky Journal Publishing Co. v. Gaines*, 139 Ky. 747, 110 S.W. 268, quoted in *Ponder v. Davis, supra*, warrants repeating:

> . . . "It is but the utterance of a legal platitude to say that it is of the utmost importance that every man should have a fair and impartial trial of his case, and that to secure this great boon two things are absolutely essential; an impartial jury and an unbiased judge. But we go further, and say that it is also important that every man should know that he has had a fair and impartial trial; or, at least, that he should have no just ground for the suspicion that he has not had such a trial."

For the reasons stated, the decision of the Court of Appeals is reversed. This cause is remanded to that court with directions that it be returned to the District Court of Surry County with order that the judgment granting summary judgment be vacated and that there be a trial by jury of all issues raised by the pleadings and evidence.

Reversed and remanded.

Justice COPELAND did not participate in the consideration or decision of this case.